**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

| | |
|---|---|
| STATE OF DELAWARE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | )    Cr. ID. No.  1107009697 |
| | ) |
| | ) |
| MICHAEL A. BROWN, | ) |
| | ) |
| Defendant. | ) |

Decided: December 8, 2014

**COMMISSIONER'S REPORT AND RECOMMENDATION THAT**

**DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF**
**SHOULD BE DENIED.**
**AND**
**RULE 61 COUNSEL'S MOTION TO WITHDRAW SHOULD BE GRANTED**

Andrew J. Vella, Esquire, Deputy Attorney General, 820 N. French St. 7th Floor, Department of Justice, Wilmington, Delaware, 19801, Attorney for the State.

Donald R. Roberts, Esquire, 900 Kirkwood Highway, Elsmere, Delaware 19805, Attorney for Defendant.

MANNING, Commissioner

This 8th day of December, 2014, upon consideration of Defendant's Motion for Postconviction Relief, the Court finds the following:

## FACTS

According to the Affidavit of Probable Cause, on July 11, 2011, at sometime shortly prior to 6:00 a.m., Michael A. Brown ("Defendant") violently kicked in the front door of 311 W 2nd Street and proceeded to an upstairs apartment. Once there, Defendant confronted the various occupants, who were sleeping, demanded money and "the rest of my stuff." Defendant assaulted the occupants with a hammer numerous times, including repeated blows to the head, before fleeing. When police arrived they noted that there was "blood throughout the entire apartment." Defendant was developed by police as a suspected after being positively identified by one of the victims who had known him for over 6 years. Defendant was arrested later that same day.

## PROCEDURAL HISTORY

Defendant was indicted on September 26, 2011, for three counts of Attempted Murder First Degree, Attempted Robbery First Degree, four counts of Possession of a Deadly Weapon During the Commission of a Felony and Burglary Second Degree. Defendant was represented by a lawyer ("Trial Counsel") and on May 15, 2012, the day his case was scheduled for trial, Defendant entered a guilty plea to two counts of Assault First Degree (lesser included offenses) and one count of Possession of a Deadly Weapon During the Commission of a Felony.[1] A Pre-Sentence Investigation was ordered. Prior to sentencing, Trial Counsel filed a motion to withdrawn the guilty plea and to simultaneously withdraw from representing Defendant. On July 24, 2012, the Court held a hearing regarding the motions. At that hearing, Defendant's complaints centered on his

---

[1] The first trial date of March 27, 2012, was rescheduled at Trial Counsel's request for personal reasons.

1

dissatisfaction with Trial Counsel and also that the SENTAC guidelines noted on the Truth In Sentencing Guilty Plea Form ("TIS") he completed when he entered the guilty plea, were incorrect. After the hearing, the Court granted Trial Counsel's motion to withdraw and stayed Defendant's motion to withdraw his guilty plea. The Court informed Defendant that he could retain new counsel to represent him and then possibly re-file an amended motion, but otherwise, his motion was denied and he would be sentenced *pro se*, on September 28, 2012.[2]

Defendant filed a *pro se* Motion for Postconviction Relief ("Motion") on October 9, 2013, pursuant to Superior Court Rule 61.[3] The Court subsequently appointed Defendant counsel ("Rule 61 Counsel") for his *pro se* Rule 61 Motion. On May 9, 2014, Rule 61 Counsel filed a Non-Merit Brief and Motion to Withdraw as Counsel under Rule 61(e)(2). Trial Counsel filed an Affidavit in response to Defendant's Motion on June 18, 2014. The State filed a Response on August 2, 2014. As of this date, Defendant has not filed a Reply.

---

[2] Defendant was sentenced, in total, to 17 years at Level 5 followed by various level of probation.
[3] Defendant did not appeal his conviction to the Delaware Supreme Court.

## DEFENDANT'S RULE 61 MOTION

Defendant's Motion raises three grounds for relief:

(1) Denial of Withdrawl [sic] of a defective plea agreement, and or a sentence imposed in an illegal manner. The sole reason that the courts own discretion, power is abuse of discretion and error of the law,

(2) Denial of Due Process clause, that Defense is reasonable to have compulsory Process in due time,

(3) Denial of the right to Counsel, and the Courts to appoint Counsel.[4]

All of Defendant's arguments are either procedurally barred or without merit.[5]

Each will be address below.

## LEGAL STANDARD

To prevail on an ineffective assistance of counsel claim, a defendant must meet the two-pronged *Strickland* test by showing that: (1) counsel performed at a level "below an objective standard of reasonableness" and that, (2) the deficient performance prejudiced the defense.[6] The first prong requires the defendant to show by a preponderance of the evidence that defense counsel was not reasonably competent, while the second prong requires the defendant to show that there is a reasonable probability that, but for defense counsel's unprofessional errors, the outcome of the proceedings would have been different.[7]

---

[4] Each argument is directly quoted from Defendant's Motion.
[5] Defendant's Motion is evaluated under Rule 61 as it existed on the date the Motion was originally filed.
[6] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).
[7] *Id.*

When a court examines a claim of ineffective assistance of counsel, it may address either prong first; where one prong is not met, the claim may be rejected without contemplating the other prong.[8]

Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[9] An error by defense counsel, even if professionally unreasonable, does not warrant setting aside the judgment of conviction if the error had no effect on the judgment.[10]

Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that defense counsel's conduct fell within a wide range of reasonable professional assistance.[11] Moreover, there is a strong presumption that defense counsel's conduct constituted sound trial strategy.[12]

In considering post-trial attacks on counsel, *Strickland* cautions that trial counsel's performance should be reviewed from the defense counsel's perspective at the time decisions were being made.[13] It is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.[14] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting efforts of hindsight. Second guessing or "Monday morning quarterbacking" should be avoided. [15]

---

[8] *Id.* at 697.
[9] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).
[10] *Strickland,* 466 U.S.at 691.
[11] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988); *Salih v. State*, 2008 WL 4762323, at *1 (Del. Oct. 31, 2008).
[12] *Strickland at* 466 U.S. 688-689.
[13] *Id.*
[14] *Id*
[15] *Id*

The United States Supreme Court recognized that there are countless ways to provide effective assistance in any given case. The United States Supreme Court cautioned that reviewing courts must be mindful of the fact that unlike a later reviewing court, trial counsel observed the relevant proceedings, knew of materials outside the record, and interacted with his client, opposing counsel, and the judge.[16]

Even the best criminal defense attorneys would not defend a particular client in the same way. Consequently, defense counsel must be given wide latitude in making tactical decisions.[17] Counsel's representation must be judged by the most deferential of standards. There is a strong presumption that defense counsel's conduct constituted sound trial strategy.[18]

## PROCEDURAL BARS

Defendant's claims are all subject to Superior Court Rule 61(i)(3).[19] Defendant could have, but did not, raise any of the claims presented in his Motion to the Delaware Supreme Court. However, since he did not, all of his claims are procedurally barred by Rule 61(i)(3). Additionally, Defendant has not established any cause for his procedural default under the Rule. Notwithstanding this procedural bar, Defendant's claims are without merit as discussed below.

## GROUND ONE

Defendant's first claim is that the Court abused its discretion when it denied his motion to withdraw his guilty plea. Defendant argues that due to an error in the TIS form

---

[16] *Harrington v. Richter,* 131 S.Ct. 770, 787- 88 (2011).
[17] *Id*
[18] *Strickland,* 466 U.S. at 689; *Harrington v. Richter,* 131 S.Ct. 770 (2011).
[19] Superior Court Rule 61(i)(3): Procedural Default. Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows: (A) Cause for relief from the procedural default and (B) Prejudice from the violation of the movant's right.

5

the Court should not have accepted his guilty plea. More specifically, the TIS form incorrectly stated that the presumptive sentence for each of the three charges was 2 – 5 years of incarceration. The correct TIS guideline for the "lead" charge of Assault First Degree is 2 – 10 years of incarceration and 2 – 5 years of incarceration for each for the remaining charges.[20] The TIS form did correctly list the statutory range of 2 – 25 years of incarceration as to each count, for a total of 6 – 75 years.

At the hearing on July 24, 2012, the transcript reveals that the Court went to great lengths to explain to Defendant that the TIS guidelines were just that, merely guidelines to assist the Court and that the Court did not have to follow them, unlike the statutory penalties. While Defendant was, unfortunately, given incorrect information regarding the TSI guidelines, it is clear from the record that the error did not prejudice him.[21] Defendant still received the benefit of a plea offer to substantially reduced charges. In the end, Defendant's actual period of incarceration was only two years above the *incorrect* TIS guidelines of 15 years, but still three years *under* the high-end of the correct TIS guidelines calling for up to 20 years of incarceration. While it is at least *arguable* under the first prong of *Strickland* that Trial Counsel was deficient in the advice given to Defendant concerning the TIS guidelines, it is clear that in the end, such deficient performance did not prejudiced Defendant.

---

[20] Per SENTAC Statement of Policy #7: "When sentencing on multiple charges, prior criminal history should be considered only in determining the guideline for the 'lead' or most serious offense. Sentences for other current charges shall be calculated based on zero criminal history."

[21] A mistake on a TIS form will not negate an otherwise valid guilty plea. *See State v. Benson*, 2009 WL 406795 at *2; *State v. Benson*, 2007 WL 625366, *1 (Del. Super. Jan. 3, 2007).

## GROUND TWO

Defendant argues that "he was under duress to take the plea because of his attorney's abuse of lawyer roles and conduct not taken an interest in the defendant's case." A review of Defendant's Motion and Trial Counsel's Affidavit reveals that the case proceeded through the normal discovery and case review process. At the final case review on March 19, 2012, the State offered Defendant a plea to the reduced charges of Assault First Degree (two counts) and Possession of a Deadly Weapon During the Commission of a Felony. At that time, Defendant rejected the plea and the case was set for trial. According to Defendant's Motion, Trial Counsel visited him two days prior to the second trial date and urged him to accept the State's Plea offer, which he ultimately did, on May 15, 2012. Defendant now appears unhappy with this decision, despite the relatively light sentence he ultimately received for such a brutal crime. Defendant states in his Motion that "his sole intention was to go to trial, but he was he [sic] Def counsel who desired to resolve the matter by plea agreement."

Defendant makes no specific or concrete allegation as to the method or manner Trial Counsel used to force him to accept the plea agreement. Rather, it appears to the Court, that once discovery was complete and all the evidence known, Trial Counsel, in his professional judgment, advised Defendant that it was in his best interest to accept the plea. It is the job of all defense counsel to advise their clients as to what they think the best course of conduct is. Often, however, this is not always what a client may want to hear, but a lawyer who blindly follows the wishes of his client, without first providing a reality-check based on the evidence and professional experience, is doing the client a

7

great disservice.[22]  Perhaps the conversation between Defendant and Trial Counsel became heated, but in the end, the transcript of the guilty plea hearing reveals that Defendant signed the plea agreement of his own free will, knowingly, voluntarily and intelligently.  In the absence of evidence otherwise, Defendant is bound by his answers on the guilty plea form and his answers to the Court during the colloquy.[23]  Therefore, Defendant's argument is conclusory and without merit.

## GROUND THREE

Defendant's final claim is couched as a "[d]enial of the right to Counsel, and the Courts to appoint Counsel."  Defendant's argument is, in essence, that the Superior Court violated his 6th Amendment Right to Counsel when it allowed Trial Counsel to withdraw and did not appoint him new counsel.[24]  Because Defendant did not raise this issue previously, the claim is procedurally barred under Rule 61(i)(3).  Even if it was not, the claim is without merit.

The transcript of the hearing on July 24, 2012, reveals that Defendant wished to withdraw his guilty plea and obtain new defense counsel.  Apparently, Defendant had lost confidence in Trial Counsel due to the recent talk about taking a plea and wanted to represent himself, taking the case to trial.  The Court held a lengthy conversation with Defendant ensuring that he understood he would not be appointed new defense counsel and that he would have to represent himself.[25]  Nevertheless, Defendant persisted in his

---

[22] In weighing the odds at trial, Trial Counsel undoubtedly placed considerable emphasis on the fact that the main eyewitness had *personally known* Defendant for over six years and knew of his father.

[23] *See Somerville v. State*, 703 A.2d 629, 632 (Del. 1997) (citations omitted).

[24] Defendant's argument is being made to the wrong court.  The best venue for raising this argument *was* the Delaware Supreme Court on a direct appeal; however,  that window closed long ago.

[25] Any alleged defect in the right to counsel waiver colloquy is not before this Court.

8

request. Ultimately, the Court denied his motion to withdraw the guilty plea and granted his request to proceed *pro se*.

Even if the Court had appointed Defendant new trial counsel, there is no basis in the record to conclude that the outcome of the case would have been any different. In fact, had the Court allowed Defendant to withdraw the guilty plea *and* appointed new trial counsel, the evidence in the record available to the Court indicates that in all likelihood, the outcome would have been far worse for Defendant. Defendant's final claim is also without merit.

For all of the foregoing reasons, Defendant's Motion should be DENIED and Rule 61 Counsel's Motion to Withdraw should be GRANTED.

**IT IS SO RECOMMENDED.**

/s/ *Bradley V. Manning*
BRADLEY V. MANNING,
Commissioner

oc: Prothonotary
cc: Defendant

9